UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DORLA F. NOKES, | CASE NO.   C05-5834RBL |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | Noted for September 15, 2006 |
| Defendant. | |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed. In response to Plaintiff's opening brief, Defendant conceded certain errors and requests that the matter be remanded for further proceedings. After reviewing the record, Plaintiff's reply to Defendant's position, the undersigned recommends that the Court remand the Administration's final decision for further consideration.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Dorla Nokes, was born in 1944. She completed High School and has had one year of training at a beautician school. (Tr.503). In March 1989, she began having problems with her legs, with numbness from the knees down. She was hospitalized for three days and referred to a neurologist and physical therapy. (Tr. 504). Mrs. Nokes was admitted to St. Peter Hospital March 7, 1989, with paresthesias in her lower extremities and an abnormal gait. (Tr. 366-385). Dr. Connolly, the consulting

neurologist, diagnosed a transverse myelitis2. (Tr. 372- 373). She was discharged on March 10, 1989 on prednisone.  Plaintiff ceased working at that time, but in 1990, she took out a loan and started a gift shop, which she ran with the help of her husband and children. (Tr. 504).  She did not work full-time, but worked three or four half-days per week. She did not take a salary from the business until 1999, when she took out $650 per month to pay for the handicapped van she needed to transport herself and her wheelchair to work. (Tr. 505-506). She usually had two employees, and her granddaughter, son and husband all helped run the shop. (Tr. 514). Her husband kept the books for the business. (Tr. 515).

During the period January 1996 through September 1998, Dr. Gomez noted: tenderness in the lower extremities that he attributed to degenerative osteoarthritis of the knees; ear and head pain he attributed to sinusitis; and IBS symptoms. (Tr. 122-131). On September 21, 1998 he ordered an MRI of Ms. Noke's brain. (Tr. 122). The MRI evidenced a possibility of MS or a neoplasm. (Tr. 147).  Another MRI of Mrs. Nokes brain was done on October 10, 2000, evidencing multiple stable deep white matter lesions, confirming multiple sclerosis ("MS").

Mrs. Nokes testified that she had MS symptoms during the period she owned the gift shop, when she had episodes of double vision when she could not drive or read.  Plaintiff alleges disability since December 31, 1989 due to MS and arthritis (Tr. 20).  Plaintiff filed her application for Title II disability insurance benefits in July 2001 (Tr. 42-44). Her application was denied (Tr. 27-29) and Plaintiff requested reconsideration, amending her alleged onset date to 1989 (Tr. 33-34).  Plaintiff's application was denied again (Tr. 35-36) and she requested a hearing (Tr. 37-39). Her request for a hearing was dismissed as a reconsidered determination based on her revised date of alleged onset of disability had not been issued (Tr. 290-93). Another reconsidered determination was issued denying her application (Tr. 300-302) and Plaintiff requested a hearing (Tr. 303). A hearing was held on March 24, 2005 (Tr. 499-527); Plaintiff, represented by an attorney, and her husband were present and testified. Also present at the hearing was Phillip R. Rodriguez, a vocational expert (Tr. 321-22, 520-26). The Administrative Law Judge (ALJ) issued a decision on April 11, 2005, finding that Plaintiff was not disabled within the meaning of the Social Security Act because she was capable of performing her past relevant work and, was therefore, not entitled to benefits (Tr. 19-25). Plaintiff requested review by the Appeals Council (Tr. 13-14) and the Appeals Council denied Plaintiff's request for review (Tr. 7-9), making the ALJ's decision the final decision of the

REPORT AND RECOMMENDATION
Page - 2

Commissioner. See 20 C.F.R. §§ 404.981, 422.210 (2005).

Plaintiff brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the defendant's final decision denying plaintiff's application for disability insurance benefits. In her opening brief plaintiff specifically argued: (1) the ALJ improperly found that Plaintiff had engaged in substantial gainful activity in 1999; (2) the ALJ failed to properly consider Plaintiff's MS a severe impairment; (3) the ALJ failed to properly consider whether or not Plaintiff's MS met or equaled a Listed disability, specifically Listing 11.09 of the Listings; (4) the ALJ improperly determined plaintiff's Residual Functional Capacity; (5) the ALJ failed to properly develop the record, specifically the need to call a medical expert to testify at Plaintiff's hearing; (6) the ALJ failed to properly consider Plaintiff's credibility and the lay witness evidence; and (7) the ALJ misstated or misinterpreted the testimony of the vocational expert.

As noted above, Defendant concedes certain errors were made by the administration and asks the court to remand the matter for further proceedings. Specifically, Defendant states (i) the ALJ should reconsider whether or not Plaintiff's work activity in 1999 was substantial gainful activity; (ii) the ALJ should reassess Plaintiff's credibility and take the lay testimony into account; (iii) the ALJ needs to reassess Plaintiff's residual functional capacity; and (iv) based on the above, the ALJ should complete the disability determination process, particularly step-four.

Given the fact that the parties agree that the administration erred in its consideration of Plaintiff's application for social security benefits, the only issue before the court is whether or not the record is fully developed and if there is a useful purpose in remanding the matter for further proceedings. The undersigned finds the records has not been properly developed by the administration and the matter should be remanded to allow another ALJ the opportunity to properly complete the five-step evaluation process.

## DISCUSSION

The decision whether to remand a case for further proceedings or simply to award benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-1178 (9th Cir. 2000). An award of benefits is appropriate when no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989). Remand is appropriate where

1    additional administrative proceedings could remedy defects. Id.; Bilby v. Schweiker, 762 F.2d 716, 719
2    (9th Cir. 1985) (*citing* Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984)). Where remand would only
3    delay the receipt of benefits, judgment for the claimant is appropriate.  Rodriguez, 876 F.2d at 763.
4         The Commissioner must following a five-step sequential evaluation process for determining
5    whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920.
6         Step One: The Commissioner determines whether the claimant is engaged in substantial gainful
7    activity. See 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). If so, the claimant
8    is not disabled. If not, the Commissioner proceeds to step two.
9         Step Two: The Commissioner determines whether the claimant has a medically severe impairment
10   or combination of impairments that significantly limits her physical or mental ability to do basic work
11   activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). If not, the
12   claimant is not disabled. If so, the Commissioner proceeds to step three.
13        Step Three: The Commissioner determines whether the claimant's impairments meet or equal the
14   requirements of a listed impairment in the Listing of Impairments, found at 20 C.F.R. pt. 404, subpt. P,
15   app. 1. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If so, the
16   claimant is disabled. If not, the process continues. Residual Functional Capacity: When a decision cannot
17   be made based at any of the first three steps of the sequential evaluation process, the Commissioner
18   determines the claimant's residual functional capacity (RFC) -- what the claimant can still do despite her
19   limitations. See 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The Commissioner then
20   proceeds to step four.
21        Step Four: The Commissioner determines whether the claimant can perform her past relevant work.
22   See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).
23   If so, the claimant is not disabled. If not, the Commissioner proceeds to step five.  Step Five: The
24   Commissioner determines whether the claimant can perform any other work existing in significant numbers
25   in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).
26   If so, the claimant is not disabled. If not, the claimant is disabled.
27        Here, the parties agree that the ALJ committed an error when he evaluated Plaintiff's work
28   activities in 1999.  The issue of Plaintiff's work activities while she owned and operated the gift shop are

not easily determined. It is equally difficult to evaluate and determine from the medical record exactly when Plaintiff's MS became disabling. Like other ailments, Plaintiff's MS appears not to have fully manifested until well after her alleged onset date of disability. As argued by Plaintiff, a medical expert's review and testimony is such a case would be useful to the administration's consideration of this case.

The court notes that the errors, agreed on by both parties, were made by the ALJ at steps one, two, three and four of the five-step evaluation process. Remanding the matter will not only allow the administration the opportunity reconsider its decision at each of these four steps, but it will further allow the full development and determination of step-five of the process. Accordingly, the matter should be remanded for further consideration. The administration shall make new findings and conclusions relevant to each of the five-steps in the evaluation process.

## CONCLUSION

Based on the foregoing, the Court should REMAND the matter for further proceedings, assigning a different administrative law judge. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 15, 2006**, as noted in the caption.

DATED this 24th day of August, 2006.

                                          */s/ J. Kelley Arnold*
                                          J. Kelley Arnold
                                          U.S. Magistrate Judge